TJT/JPL:PJC
F. #2021R00440

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

      - against -

VLADIMIR GERTSIK,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - X

I N F O R M A T I O N

Cr. No. 24-149 (ARR)
(T. 18, U.S.C., §§ 371, 982(a)(7),
982(b)(1), 2 and 3551 et seq.;
T. 21, U.S.C., § 853(p); T. 42, U.S.C.,
§ 1320a-7b(b)(1)(B))

THE UNITED STATES CHARGES:

INTRODUCTION

At all times relevant to this Information, unless otherwise indicated:

I.    Background

    A.    Medicare and Medicaid

    1.    Medicare was a federal health care program providing benefits to persons who were at least 65 years old or disabled. Medicare was administered by the Centers for Medicare and Medicare Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

    2.    Medicare was divided into multiple parts. Medicare Part A covered health services provided by hospitals, skilled nursing facilities, hospices and home health agencies. Medicare Part B covered outpatient hospital services and professional services provided by physicians and other providers. Medicare Part C—also known as Medicare Advantage—offered beneficiaries the opportunity to secure coverage from private insurers for

many of the same services that were provided under Parts A and B, in addition to certain mandatory and optional supplemental benefits. Medicare Part D provided prescription drug coverage to persons who were eligible for Medicare.

3. Medicaid was a federal and state health care program providing benefits to individuals and families who met specified financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care. CMS was responsible for overseeing Medicaid in participating states, including New York State. Individuals who received benefits under Medicaid were referred to as "recipients."

4. Medicaid covered the costs of medical services and products ranging from routine preventive medical care for children to institutional care for the elderly and disabled. In New York State, Medicaid provided coverage to its recipients for prescription drugs. Medicaid recipients could obtain their prescription drug benefits from pharmacies either through "fee-for-service" enrollment or through Medicaid Managed Care plans, which were administered by private insurance companies that were paid by Medicaid.

5. Medicare, Medicare Advantage, Medicaid and Medicaid Managed Care plans (collectively the "Plans") were "health care benefit program[s]," as defined by Title 18, United States Code, Section 24(b) and referenced in Title 18, United States Code, Section 1347, and Title 42, United States Code, Section 1320a-7b, as well as "Federal health care program[s]," as defined by Title 42, United States Code, Section 1320a-7b(f).

6. Medical providers must enroll with Medicare and Medicaid in order to submit claims for reimbursement to the Plans. Claims are typically submitted electronically and identify the service or good provided to the patient. Medical providers were authorized to

submit claims to the Plans only for services they actually rendered and were required to maintain patient records verifying the provision of services.

7.    By submitting a claim to the Plans, a provider certified, among other things, that the services were rendered to the patient, were medically necessary and were not rendered as a result of kickbacks or bribes.

B.    The Defendant and Relevant Entities and Individuals

8.    The defendant VLADIMIR GERTSIK was a medical doctor specializing in podiatry who was licensed to practice medicine by New York State.

9.    Co-Conspirator-1, an individual whose identity is known to the United States, was a part owner and manager of 888 Pharmacy Inc. ("888 Pharmacy"), a retail pharmacy located in Brooklyn, New York.

10.    Co-Conspirator-2, an individual whose identity is known to the United States, was a part owner of 888 Pharmacy and Huikang Pharmacy Inc. ("Huikang"), a retail pharmacy located in Brooklyn, New York.

II.    The Health Care Kickback Scheme

11.    In or about and between April 2018 and December 2022, the defendant VLADIMIR GERTSIK, together with others, agreed to execute and executed a scheme to enrich themselves through the solicitation, payment and receipt of illegal health care kickbacks in exchange for GERTSIK referring prescriptions for medications to 888 Pharmacy and Huikang for which 888 Pharmacy and Huikang could submit claims to the Plans for reimbursement.

12.    As part of the scheme, Co-Conspirator-1 instructed the defendant VLADIMIR GERTSIK to write checks for the rent for the medical office GERTSIK used that was located above 888 Pharmacy.  Upon GERTSIK writing the rent checks, Co-Conspirator 1

paid illegal kickbacks to GERTSIK by repaying GERTSIK the rent amounts in cash. Co-Conspirator 1 also provided GERTSIK with illegal kickbacks by providing GERTSIK with office staff paid for by 888 Pharmacy.

13. Co-Conspirator-1 directed beneficiaries and recipients from 888 Pharmacy to the defendant VLADIMIR GERTSIK's office, which was located above 888 Pharmacy. In exchange for Co-Conspirator 1 referring beneficiaries and recipients, providing office staff and returning rent monies to GERTSIK, GERTSIK wrote prescriptions for those beneficiaries and recipients and referred the same to 888 Pharmacy. 888 Pharmacy dispensed the medications to beneficiaries and recipients and thereafter submitted claims for reimbursement to the Plans.

14. Co-Conspirator-2 had a similar arrangement with the defendant VLADIMIR GERTSIK at Huikang. In exchange for Co-Conspirator-2 referring beneficiaries and recipients, providing office staff and office space to GERTSIK, GERTSIK wrote prescriptions for those beneficiaries and recipients and referred the same to Huikang. Huikang dispensed the medications to beneficiaries and recipients and thereafter submitted claims for reimbursement to the Plans.

15. In or about and between April 2018 and December 2022, the defendant VLADIMIR GERTSIK received approximately $158,000 in kickbacks in the form of office rent and staff in exchange for referring beneficiaries and recipients' prescriptions to 888 Pharmacy and Huikang. As a result of these illegal kickbacks, 888 Pharmacy and Huikang were paid approximately $7.3 million in Medicare Part D claims.

COUNT ONE
(Conspiracy to Defraud the United States and Receive Health Care Kickbacks)

16. The allegations contained in paragraphs one through 15 are realleged and incorporated as if fully set forth in this paragraph.

17.     In or about and between April 2018 and December 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VLADIMIR GERTSIK, together with others, did knowingly and willfully conspire to:

(a)     defraud the United States, by impairing, impeding, obstructing and defeating through deceitful and dishonest means, the lawful government functions of the Centers for Medicare and Medicaid Services in its administration of Medicare and Medicaid; and

(b)     commit certain offenses against the United States, that is, to solicit and receive remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for purchasing, leasing, ordering and arranging for the purchasing, leasing and ordering any good, facility, service and item for which payment may be made in whole and in part by a Federal health care program, contrary to Title 42, United States Code, Section 1320a-7b(b)(1)(B).

18.     In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendant VLADIMIR GERTSIK, together with others, committed and caused the commission of, among others, at least one of the following:

<u>OVERT ACTS</u>

(a)     On or about February 8, 2022, Co-Conspirator-1 texted GERTSIK, "Hello doctor, can you write a check $ 7166.89 [sic]."

(b)     On or about August 9, 2022, Co-Conspirator-1 texted GERTSIK, "Do you can you [sic] write a check for $ 3479.55 [sic] thanks."

(c)   On or about October 11, 2022, Co-Conspirator-1 texted GERTSIK, "Doctor can you write a check $3492.10 [sic]," to which GERTSIK responded, "Sure."

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNT TWO
### (Receipt of Health Care Kickbacks)

19.   The allegations contained in paragraphs one through 15 are realleged and incorporated as if fully set forth in this paragraph.

20.   On or about October 11, 2022, within the Eastern District of New York and elsewhere, the defendant VLADIMIR GERTSIK, together with others, did knowingly and willfully solicit and receive remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for purchasing, leasing, ordering and arranging for the purchasing, leasing and ordering any good, facility, service and item for which payment may be made in whole and in part by a Federal health care program, to wit: the receipt of approximately $3,492.10, in return for referring prescriptions for medications for beneficiaries and recipients to 888 Pharmacy.

(Title 42, United States Code, Section 1320a-7b(b)(1)(B); Title 18, United States Code, Sections 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION

21.   The United States hereby gives notice to the defendant that, upon his conviction of either of the offenses charged herein, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(7), which requires any person convicted of a Federal health care offense to forfeit property, real or personal, that constitutes, or is derived directly or indirectly from, gross proceeds traceable to the commission of such offense.

7

22.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

>       (a)     cannot be located upon the exercise of due diligence;
>
>       (b)     has been transferred or sold to, or deposited with, a third party;
>
>       (c)     has been placed beyond the jurisdiction of the court;
>
>       (d)     has been substantially diminished in value; or
>
>       (e)     has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(7) and 982(b)(1); Title 21, United States Code, Section 853(p))


*By Carolyn Pokorny, Assistant U.S. Attorney*

BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK


Glenn S. Leon/PJC

GLENN S. LEON
CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE