**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| | ) |
| **v.** | ) **Docket No.: 0207 1:24CR00149-001(DG)** |
| | ) |
| **VLADIMIR GERTSIK** | ) |

**DEFENDANT'S SENTENCING MEMORANDUM**

The Defendant, Vladimir Gertsik ("the Defendant"), submits this Memorandum in advance of Sentencing. For the reasons set forth below, the Defendant respectfully requests that a Downward Departure be granted.

## Charges

The Defendant has been charged with, and pled Guilty to, the following two counts:

**Count 1**: Conspiracy to Defraud the United States and Receive Kickbacks.
18 U.S.C. §371. Not more than 5 years imprisonment/$250,000 fine (Class D Felony).

**Count 2:** Receiving Health Care Kickbacks 42 U.S.C. §1320a, 42 U.S.C. §1320a-7b(b)(1)(B). Not more than 10 years' imprisoned; $250,000 fine (Class C Felony).

Count I asserts that, between April 2018 and December 2022, the Defendant conspired to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the Centers for Medicare and MedicaidServices in its administration of Medicare and Medicaid; and committed certain offenses against the United States to solicit and receive remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for purchasing, leasing, ordering, and arranging for the purchasing, leasing, and ordering any good, facility, service, and item for which payment may be made in whole and in part by a Federal health care program, contrary to 42 U.S.C. §1320a-7b(b)(1)(B), in violation of 18 U.S.C. §371.

Count 2 charges that, on October 11, 2022, the Defendant solicited and received remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for purchasing, leasing, ordering, and arranging for

> the purchasing, leasing, and ordering any good, facility, service, and item for which payment may be made in whole and in part by a Federal health care program, specifically, the receipt of approximately $3,492.10, in return for referring prescriptions for medications and beneficiaries and recipients to 888 Pharmacy, in violation of 42 U.S.C. § 1320a-7b(b)(1)(B).

(Presentence Investigation Report ["PSR"], pp. 3-4).

**Sentencing Recommendation**

Chief U.S. Probation Officer Robert L. Capers ("Capers"), issued a Sentencing Recommendation ("SR") based on a Total Offense Level of fifteen (15), with a Criminal History Category of 1 (SR, p. 1), and a recommended $7500 fine and two (2) years of Probation (*Id.* at p. 1). The justification for such is described, *inter alia*, as being that these offense "represents the" 56-year-old's "only known contact with the criminal justice system" (*Id.* at 2). As such, he is in Criminal History Category 1 (*Id.* at p. 2). The Offense Level of 15 and corresponding guideline imprisonment range of 18 months to 24 months takes into account the two-level Zero-Point Offender reduction under USSG 4C1.1 (*Id.*). Additionally, the Defendant experienced an average childhood devoid of abuse or unmet wants (*Id.*). In 1992, the Defendant relocated to the United States and became a naturalized citizen on March 20, 1998 (*Id.*).

The Defendant currently has colorectal cancer and is presently in remission, and suffers from asthma and sinusitis (*Id.*). Following his cancer diagnosis, the Defendant experienced symptoms of anxiety and excoriation compulsions (*Id.*). He is not adverse to mental health treatment (*Id.*).

The Defendant earned his Doctoral Degree in Podiatry in 1997, and until May 2026, was self-employed as a podiatrist (*Id.*). He is currently unemployed and applying for New York disability benefits (*Id.*).

While stating that the Defendant appeared to have to committed the instant offense for his own financial benefit with no regard for the consequences, his "participation in the instance offense" "appears to be a fairly narrow lapse in judgment" (*Id.* at p. 2). He entered into a Cooperation Agreement with the government (*Id.*). The Defendant—as the only doctor charged—provided information related to the kickback scheme involving payments for the doctors' office spaces and staff (*Id.*).

The Defendant poses a low risk of substance abuse, with the Probation Department respectfully commending that the Defendant be excused from the mandatory drug testing (*Id.* at p. 3).

**Offense Conduct**

The PRS explains that, by submitting a claim to Medicare, a contractor certifies that the services were rendered to the patient, were medically necessary, and were not rendered as a result of kickbacks or bribes (PSR, p. 5, ¶14).

The Defendant was a medical provider who specialized in podiatry and enrolled as a Medicare and Medicaid provider (*Id.* at p. 7, ¶24).

Between January 2015 and December 2022, co-Defendants Taesung Kim ("Kim"), Jiang, and Lu agreed to execute a fraudulent scheme to submit claims to Medicaid, the contractors, and Medicare for the dispensing of pharmaceutical and OTC products that were medically

unnecessary, procured by the payments of kickbacks and bribes, and not provided to Medicare beneficiaries and Medicaid recipients (*Id.* at p. 8, ¶35). Between November 2021 and November 2022, Huang participated in this scheme through her employment with Elmcare and NY Elm (*Id*.).

Lai was instructed by Kim to refer 88 Pharmacy customers to specific podiatrists, including the Defendant, and were asked to get pain patches and other prescriptions that the pharmacy profited from (*Id*. at ¶39). 88 Pharmacy was working with podiatrists, such as the Defendant (*Id*. at pp. 8-9, ¶39).

On multiple dates between November 2021 and November 2022, Elmcare and others, including Huang referring a patient to the Defendant, who could provide additional prescriptions that Elmcare, NY Elm, and DA Surgical Supply could bill to Medicare (*Id*.at p. 9, ¶43).

Another co-conspirator was aware that Kim worked closely with doctors, including the Defendant, whose rent was paid for by Kim (*Id*. at p. 10, ¶48).

There are no identifiable victims in this offense (*Id*. at ¶50).

The Defendant self-surrendered to the FBI on June 11, 2024, and made no post-arrest statements (*Id*. at p. 11, ¶51).

The PSR states that the base offense level is 8, as the Defendant received kickbacks totaling $158,000 (*Id*. at 11, ¶54). Since the kickbacks was greater than $150,000 but not more than $250,000, an increase of 10 levels is warranted (*Id.*). However, the Defendant "was not an organizer, leader, manager, or supervisor of the instant offense, as he did not direct or control the actions of the other participants (*Id*. at ¶56). Therefore, he does not receive an aggravating role adjustment under USSG 3B1.1 (*Id*. at pp. 11-12).

There is no information indicating that the Defendant impeded or obstructed justice (*Id*. at p. 12, ¶57).

The Defendant's Guilty Plea spared the court and government the burden of preparing for trial, a reduction for acceptance of responsibility is award (*Id*. at ¶58).

For Count Group 1, the Base Offense Level is 8 (*Id*. at p. 12, ¶61). Since the kickbacks were greater than $150,00, but not more than $250,00, an increase of 10 levels is warranted (*Id*. at ¶62). No victim related adjustment was applicable; but the adjustment for role in the offense increased the level by 2 points (*Id*. at ¶¶63-64). There was no increase for Obstruction of Justice (*Id*. at ¶55). He received a reduction of 3 points for accepting responsibility (*Id*. at p. 13, ¶¶71-72), and a reduction of 2 points for being a Zero-Point Offender (*Id*. at ¶73). His total Offense Level is 15 (*Id*. at ¶74).

The Defendant sports no criminal history of any sort (*Id*. at pp. 13-14).

The Defendant's background reveals that he was born in 1970, in the USSR (*Id*. at p. 14, ¶82). The Defendant's mother, 76, resides in Brooklyn, and suffers from Parkinson's Disease (*Id*. at ¶82). The Defendant is her primary caretaker and is responsible for taking her to all medical appointments, as well as picking up and administering her medication (*Id*.). His mother also suffers from Dementia; the Defendant is actively monitoring her mental state and, should she become a danger to herself, he would make arrangements for her to reside with him or at a long-term care facility (*Id*. at p. 15). If the Defendant is sentenced to prison, he—an only child—would have no relatives in the area who could care for his mother (*Id*.).

The Defendant has been in a relationship with Sezim Seno ("Seno") since 2013 (*Id*. at ¶85). The two share a good relationship, which primarily deals with their raising children

together (*Id*.). The relationship produced two children—ages 10 and 12—with whom the Defendant has maintained a very good relationship and spends time (*Id*. at ¶85).

The Defendant has resided at the same Brooklyn address since 2003 (*Id*. at ¶86). While he was naturalized before he committed the instant offenses, the Defendant is informed that his guilty plea may carry a risk of denaturalization and deportation (*Id*. at p. 16, ¶87).

Physically, the Defendant was diagnosed with colorectal cancer in October 2020, and is presently in remission (*Id*. at ¶89). Following his diagnosis, the Defendant underwent radiation and surgery to remove the shrunken colon mass (*Id*.). The Defendant then received chemotherapy multiple times per week until his remission in 2022 (*Id*.).

The Defendant was also diagnosed with asthma and sinusitis (*Id*. at ¶90).

Having no diagnosed mental and emotional health conditions, the Defendant—following his cancer diagnosis—has experienced heightened levels of anxiety (*Id*. at ¶91). This often leads to overwhelming fear and ultimately excoriation compulsions (*Id*.). He would go to therapy if referred to it (*Id*. at ¶92). He has no history of gambling or suicidal ideations (*Id*. at ¶93).

The Defendant has no history of illicit substance use or alcohol abuse (*Id*. at ¶94).

The Defendant attended Minsk State Medical Institute in Minsk, Belarus (*Id*. at ¶96). In 1997, the Defendant earned his Doctoral Degree from the New York College of Podiatric Medicine, in New York (*Id*. at p. 17, ¶95). The Defendant was granted a license in Podiatry in December 1998, which is active and upon which he has had no enforcement actions (*Id*. at ¶98).

From 1999 to May 5, 2026, the Defendant was self-employed through Gertsik Podiatry in Brooklyn, New York (*Id*. at ¶99). Throughout the years, the defendant's income has varied, and he is unable to ascertain his average annual income (*Id*.). The Defendant stopped seeing patients

due to side effects of his cancer diagnosis and continued exposure to fungi (*Id*.). As of May 5, 2026, the Defendant is no longer seeing patients (*Id*.).

From 1992 through 1999, the Defendant attended Podiatry School, completing his podiatry residency, and was unemployed (*Id*. at ¶100).

**Argument**

## I. The Court Should Downward Depart From the Sentencing Guidelines On the Bases Set Forth in the Statute.

<u>Law</u>

18 U.S.C. §3553 outlines the procedures for imposing sentences in a criminal case. The starting point and initial benchmark in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 39, 49 (2007).

The first factor to be considered requires the court to evaluate the nature and circumstances of the offense and history and characteristics of the defendant. 18 U.S.C. §3553(a)(1).

The second factor instructs the Court to consider "the need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. §3553(a)(2).

The third §3553(a) factor requires the court to detail the kinds of sentences available for the defendant. 18 U.S.C. §3553(a)(3).

Fourth, the court must discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." 18 U.S.C. §3553(a)(4)(A).

The fifth factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. §3553(a)(5).

The sixth 3553(a) factor requires this Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. §3553(a)(6).

The seventh and final factor requires the court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. §3553(a)(7).

Sentencing proceedings are as much dialogues as pronouncements. Under Federal Rule of Criminal Procedure 32(c)(3)(C), the court, before imposing sentence, must "address the defendant personally and determine if the defendant wishes to make a statement and to present any information."

<u>Application</u>

1. Nature and Circumstances of the Offense and History and Characteristics of the Defendant.

The Defendant has not denied the circumstances or nature of the offense. The Defendant, however, has not engaged in any criminal activity in the past, but has devoted himself to a life in medicine. He has a family, has resided in the City of New York for many years, and cares for his ailing mother. In addition, he suffers from serious medical conditions—including cancer—and is open to mental health treatment. He is also of no threat to society.

2. The Need for the Sentence Imposed to Reflect the Seriousness of the Crime, Afford Adequate Deterrence to Criminal Conduct, Protect the Public From Further Crimes of the

Defendant, and Provide the Defendant With Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner.

The Defendant is an educated and hardworking man whose participation in this crime was minimal and an aberration in his life. He does not need help with any training, and is very unlikely to reoffend. The Defendant is not working or able to work, and applying for Disability. He has been unable to work since May 2026—unrelated to the instant offenses—has gone through surgery and suffers from flatulence and incontinence. His lack of work in the industry means that his likelihood of reoffending is next to nil.

3. The Kinds of Sentences Available for the Defendant.

As set forth in the sentencing submissions, the Defendant may be incarcerated or placed on probation.

4. The Kinds of Sentence and Sentencing Range Established for the Applicable Category of Offense Committed by the Applicable Category of Defendant as Set Forth in the Guidelines.

The Defendant is eligible for incarceration and for Probation.

5. Any Pertinent Policy Statement Issued by the Sentencing Commission.

This is not applicable.

6. The Need to Avoid Unwarranted Sentence Disparities Among Defendants With Similar Records Who Have Been Found Guilty of Similar Records Who Have Been Found Guilty of Similar Conduct.

This is not of concern.

7. The Need to Provide Restitution to Any Victims of the Offense.

As noted in the sentencing documents, there has been no victim impact in this case.

## II. A Myriad of Facts Rally in Favor of a Downward Departure From the Sentencing Guidelines.

A. Downward Departure is Warranted Based on the Defendant's Minor Role in the Conspiracy.

Under U.S.S.G. §3B1.2(b) applies whenever the defendant proves by a preponderance of the evidence that she is less culpable "as compared to the average participant in such a crime." *United States v. Carpenter*, 252 F.3d 230, 235 (2d Cir. 2001).

Under the Sentencing Guidelines, a defendant who is "plainly among the least culpable of those involved in the conduct of a group" is deemed a "minimal participant" and awarded a four-level reduction in the otherwise applicable offense level. *U.S. v. Hued*, 338 F.Supp.2d 453, 454 (S.D.N.Y. 2004). A defendant who "is less culpable than most other participants, but whose role could not be described as minimal is a "minor participant" and awarded a two-level reduction. *Id*. Defendants whose participation falls between "minor" and "minimal" may be awarded a three-level reduction. *Id*.

In determining whether a defendant qualifies for one of these adjustments, the Court must evaluate "the nature of the defendant's relationship to other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise." *United States v. Garcia*, 920 F.2d 153, 155 (2d Cir. 1990).

Here, as demonstrated by the PSR, the Defendant occupied a very minimal role in the crimes to which he pled guilty. While he does not dispute the seriousness thereof, it was an out-of-character action that the Defendant found himself caught up into.

B. Downward Departure is Warranted Based on the Defendant's Acceptance of Responsibility.

The Defendant also seeks a downward departure on the basis of his acceptance of responsibility and cooperation with the Government. *See, e.g., U.S. v. Ortiz*, 218 F.3d 107 (2d Cir. 2000).

As noted in the sentencing documents, the Defendant immediately pled Guilty to the

Charges, and entered into a Cooperation Agreement with the Government (Exhibit A). As a result, no expenses were incurred or time exhausted litigating the case.

C. Downard Departure is Warranted Based on the Defendant's Lack of Criminal History.

U.S.S.G. §5C1.1 created an "Adjustment for Certain Zero-Point Offenders" that reduces the recommended advisory guidelines range by two levels for certain defendants with no criminal history. *United States v. Sierra*, 2024 WL 1834081 (S.D.N.Y.).

Here, as set forth in the sentencing documents, the Defendant has led a productive, non-criminal lifestyle; has a family; and has no criminal history.

D. Downward Departure is Warranted Based on the Defendant's Compromised Health.

The Defendant also seeks a departure based on his compromised health. *Brown v. U.S.*, 637 F.Supp.2d 212, 215 (S.D.N.Y. 2009).

Here, the Defendant suffers from cancer and other health conditions that have greatly affected him. He is also of a relatively advanced age.

E. Downward Departure is Warranted Based on the Defendant's Elderly Mother.

The Court of Appeals for the Second Circuit recognizes the power of the trial judge to depart from the Sentencing Guidelines based on family circumstances. *See, United States v. Johnson*, 964 F.2d 124, 129 (1992)("Extraordinary family circumstances are widely accepted as a valid reason for departure"). It has not limited this power to cases in which defendants care for minor children. *See, e.g., United States v. Alba*, 933 F.2d 1117, 1122 (2d Cir. 1991)(considering, in granting a departure, the defendant's role in caring for his disabled father and paternal grandmother). Under *Johnson, supra*, and like cases, the court is impelled to look not only at the crime, but at the criminal, including his or her family and community responsibilities. This is

part of the sentencing court's larger obligation to consider all the facts and circumstances of the case. *See,* 18 U.S.C. §3661.

While "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted," U.S.S.G §5H1.6 (Policy Statement), courts consider the following non-exhaustive factors in determining whether to downwardly depart from the" Guidelines: (1) The seriousness of the offense; (2) the involvement in the offense, if any, of members of the defendant's family; and (3) the danger, if any, to members of the defendant's family as a result of the offense. Application Note 19(A) to U.S.S.G §5H1.6 (Policy Statement). For a court to specifically depart "based on the loss of caretaking or financial support of the defendant's family," in addition to considering the foregoing non-exhaustive factors, the court must find that (1) a Guidelines sentence3 will cause a substantial, direct, and specific loss of essential caretaking, or essential financial support, to the defendant's family; (2) the loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant; (3) the loss of caretaking or financial support is one for which no effective remedial or ameliorative programs reasonably are available, such that the defendant's caretaking or financial support are irreplaceable to the defendant's family; and (4) the departure will effectively address the loss of caretaking or financial support. *Application Note 1(b)* to U.S.S.G. §5H1.6 (Policy Statement).

Here, the Defendant's elderly mother is entirely dependent upon him—an only child—to care for her. Should he be unable to care for her, she will end up in a home.

Lastly, the Defendant respectfully requests that the Court consider his beleaguered financial condition when considering the imposition of fines. It has been recommended that he pay 10% of his gross income to the Court. As reflected in the PSR, the Defendant has earned

$13,974.00 in 2023; $49,234.00 in 2024; and $34,703.00 in personal income; and $3,905.00 in 2023, $23,263.00 in 2024, and $14,765.00 in business income (PSR, p. 17, ¶101). *See, e.g., U.S. v. Serpico*, 20 Fed.Appx. 27 (2d Cir. 2001)(district court properly imposed minimum fine and subordinate payment of the fine to payment of restitution based on defendant's financial wherewithal). Indeed, sentencing judges "shall consider," *inter alia*, "the defendant's ability to pay the fine" and "the burden that the fine places on the defendant and his dependents." *United States v. Zukerman*, 897 F.3d 423, 431 (2d Cir. 2018).

**Conclusion**

For the reasons set forth above, the Defendant seeks a downward departure from the Sentencing Guidelines and receive no prison time. *See, e.g., U.S. v. DeFreitas*, 8 Fed.Appx. 58 (2d Cir. 2001)(defendant convicted, after jury trial, of conspiracy to traffic in, and trafficking in, counterfeit goods in violation of 18 U.S.C. §§371 and 2320(a), sentenced to term of two years' probation, a $3,000 fine, and mandatory $200 special assessment); *U.S. v. Snell*, 2000 WL 1818549 (S.D.N.Y.)(three years of probation); *U.S. v. Gentile*, 2007 WL 2009779 (D. Conn.)(probation); *U.S. Couto*, 119 Fed.Appx. 345 (2d Cir. 2005)(probation).

Dated: August 20, 2026

__*/s/ Natalia Gourari*________

Natali Gourari
Gourari Law
222 Bloomindale Road
#302
White Plains, New York 10605
(212) 571-0004 / (917) 331-0025
nygrouari@gourarilaw.com
Attorney for the Defendant